CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

NOV 0 9 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| NORA JANE SMITH, )<br><br>Plaintiff, )<br><br>v. )<br><br>MICHAEL J. ASTRUE, Commissioner )<br>of Social Security, )<br><br>Defendant. ) | CASE NO. 3:07CV00014<br><br><br>REPORT AND RECOMMENDATION<br><br>By: B. Waugh Crigler<br>U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's

protectively filed February 25, 2005 claim for a period of disability and disability insurance

benefits under the Social Security Act (Act), as amended, 42 U.S.C. §§ 416 and 423 is before this

court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a

report setting forth appropriate findings, conclusions and recommendations for the disposition of

the case. The questions presented are whether the Commissioner's final decision is supported by

substantial evidence, or whether there is good cause to remand for further proceedings. 42

U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order

enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion

for summary judgment, and DISMISSING this case from the docket of the court.

In a decision eventually adopted as a final decision of the Commissioner, an

Administrative Law Judge (Law Judge) found that plaintiff had not engaged in significant gainful

activity since her alleged disability onset date, June 30, 2002[1], and that she was insured for

---

[1]Plaintiff's application asserts June 30, 2002 as the date of disability onset. (R. 59.) At
the hearing there was some discussion about whether plaintiff last worked on June 1, 2003. (R.
191-193.) The Law Judge determined that her disability onset date would remain June 30, 2002,
unless the evidence demonstrated otherwise. (R. 192.)

benefits through December 31, 2007. (R. 14.) The Law Judge determined that plaintiff's back disorder and diverticulitis/irritable bowel syndrome were severe impairments, but not severe enough to meet or equal any listed impairment. (*Id.*) He further determined that although her impairments could be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (R. 18.) The Law Judge found that plaintiff retained the residual functional capacity ("RFC") to perform light work which involves lifting up to twenty pounds occasionally and ten pounds frequently; standing and/or walking up to six hours in an eight-hour workday; sitting up to six hours in an eight-hour workday; performing unlimited pushing and/or pulling, including the operation of hand and/or foot controls; performing occasional postural activities, including climbing, balancing, stooping, kneeling, crouching and crawling; and no manipulative, visual, communicative, or environmental limitations. (R. 15.) The Law Judge concluded that plaintiff could return to her past relevant work as a receptionist and a cashier/presser, as those positions are actually and generally performed. (R. 20.) Thus, the Law Judge ultimately found that she was not disabled under the Act. (R. 21.)

Plaintiff appealed the Law Judge's decision to the Appeals Council, which found no basis in the record, or in the reasons advanced on appeal, to review the Law Judge's decision. (R. 5-8.) Accordingly, the Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. This action ensued.

In a brief filed in support of her motion for summary judgment, plaintiff initially contends that the Law Judge failed to give proper weight to her treating orthopaedic surgeon, Stephen T. Michaels, M.D. (Plaintiff's Brief, pp. 6-8.) Specifically, plaintiff contends that the Law Judge

2

erred in giving "little weight" to Dr. Michaels' October 27, 2005 opinion that she "remains disabled." (Pl's Brief, pp. 7-8.)

It is well-established that the court generally should accord greater weight to the claimant's treating physician. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). At the same time, when that physician's opinion is not supported by the objective medical evidence or is inconsistent with other substantial evidence, it may be given "significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Moreover, where the evidence is such that reasonable minds could differ as to whether the claimant is disabled, the decision falls to the Law Judge to resolve the inconsistencies in the evidence. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *Craig*, 76 F.3d at 589.

Plaintiff was initially seen by Dr. Michaels on April 5, 1999. (R. 160-161.) On September 10, 1999, Dr. Michaels performed a surgical procedure known as a lumbar decompression and fusion. (R. 154-156.) A week later, plaintiff reported that her leg pain had "vanished." (R. 153.) Her radiological studies showed excellent placement of the hardware, and the doctor recommended a slow increase in her activities. (*Id.*) On October 26, 1999, plaintiff reported that her symptoms continued to improve. (R. 152.) Dr. Michaels again recommended she increase her activity. (*Id.*) On November 16, 1999, plaintiff reported that her activity level had continued to increase, she was doing so well that she was only taking an Ibuprofen tablet every two to three days, and she was anxious to return to her household chores. (R. 150.) Dr. Michaels' examination on that date revealed only mild tenderness in the right sacroiliac region, and plaintiff was cleared for light housework and a return to "regular duty" work in three weeks. (R. 150-151.) On January 17, 2000, plaintiff reported only mild residual numbness and

3

occasional right sacroiliac pain, but otherwise she was back to her full level of activity. (R. 149.)
Dr. Michaels found that she had an "excellent" range of motion and was doing "extraordinarily
well," and he recommended she continue to increase her level of activity. (*Id.*) When plaintiff
was seen on July 13, 2000, she reported only "occasional discomfort," increased activity, and
functioning at a level much higher than preoperatively. (R. 147.) Upon evaluation, Dr. Michaels
determined that her lumbosacral spine had an acceptable range of motion, her hardware was in an
excellent position, and she had good consolidation of her fusion. (*Id.*) Dr. Michaels discharged
plaintiff from his care with instructions to use Ibuprofen as needed for intermittent discomfort.
(*Id.*) Almost two years later, on July 5, 2002, plaintiff returned to see Dr. Michaels. (R. 146.)
At that time, she reported functioning "quite well" but had quit her job because of the unusually
extreme physical demands.[2] (*Id.*) Upon evaluation, the doctor found that she was experiencing
some stiffness and tenderness. (*Id.*)

It was not until October 27, 2005, some three years after her last visit, that plaintiff
returned to Dr. Michaels and presented for an evaluation of her physical capacities. (R. 144-145)[3]
At that time, plaintiff reported pain in the lower back and intermittent numbness in both feet.
(R. 145.) While Dr. Michaels' physical examination revealed "some decreased sensation" in her
right lower extremity, he found her neurologically "intact," and her diagnostic studies revealed
no evidence of hip destruction and good placement of her pedicle screws and an intact fusion.

_____

[2]At her hearing, plaintiff testified that this job required her to sit eight hours a day at her
desk without breaks. (R. 204.)

[3]It is difficult not to draw an inference that this evaluation was performed in connection
with the instant claim for benefits.

4

(*Id.*) Nevertheless, Dr. Michael opined that plaintiff "remain[ed] disabled." [4] (*Id.*)

The undersigned is of the view that the record evidence substantially supports the Law Judge's decision to accord "little weight" to Dr. Michaels' October 27, 2005 opinion that plaintiff either was or remained disabled. Dr. Michaels' medical records reveal that, following her 1999 surgical procedure, plaintiff received sporadic or intermittent treatment. *Two years* elapsed after Dr. Michaels discharged her before she returned to see him, and he then observed that plaintiff was "functioning quite well," presented neurologically "intact," showed "excellent" positioning of her hardware, and had "good consolidation of her fusion." (R. 146.) After that, more than *three years* elapsed before Dr. Michaels again saw her. (R. 144-145.) There is nothing in the extant record to show that plaintiff sought treatment for her alleged disabling back pain from another physician during these extended lapses in treatment with Dr. Michaels.

Moreover, the record shows that plaintiff received only conservative treatment following her 1999 surgery. For example, the record shows that on July 9, 2005, January 9, 2006, and June 28, 2006 she was *not taking any pain medication at all.* (R. 167, 170, 178.) Again, there is no evidence suggesting plaintiff was referred to, sought, or received any physical therapy.

Dr. Michaels' October 27, 2005 opinion that plaintiff was disabled appears inconsistent with the results of his physical examination and the diagnostic studies performed on that date. (R. 145.) As noted above, there was only some decrease in the sensation of her right lower

_____

[4]Plaintiff refers to two pages in the record to support her argument that Dr. Michaels tendered opinions that she was disabled "on more than one occasion." (Pl's Brief, p. 8.) However, both cited pages refer to the same evaluation date, October 27, 2005. (R. 144, 145.) Moreover, opinions as to disability are reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1).

5

extremity, she was neurologically intact, her x-rays revealed hip destruction, her pedicle screws remained in place, and her fusion was intact. (*Id.*) The Law Judge certainly was entitled to consider these factors in his decision not to fully credit Dr. Michaels' October 27, 2005 opinion that plaintiff was disabled.

Finally on this point, there is other medical evidence which, though not dispositive, supports the Law Judge's decision to give Dr. Michaels' October 27, 2005 opinion "little weight." Luc Vinh, M.D. and Syed S. Hassan, M.D. both reviewed the medical record for the State Agency.[5] (R. 136-142.) Dr. Vinh adopted the findings of an evaluating physician, Charles H. Cho, D.O., (R. 130-135) and concluded that she could perform a range of light work. (R. 141.) Dr. Hassan concurred with this assessment. (R. 142.)

Next, plaintiff contends that the Law Judge erred in failing to find that her condition did not meet or equal Listing 1.04[6]. (Pl's Brief, p. 8.) She believes the Law Judge should have sought the advice of a medical expert on this question. (*Id.*) Finally, plaintiff argues that the combination of her impairments "should" be considered to equal a listed impairment. (*Id.*)

A claimant bears the burden of showing that his or her impairment meets or equals a listed impairment. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). In determining whether a claimant's medically determinable impairment meets or equals the requirements of any listing,

_____

[5]Plaintiff points out that the word "not" is crossed out in Dr. Vinh's handwritten notes. (Pl's Brief, p. 7; R. 141.) Plaintiff also points out that Dr. Vinh refers to Dr. Cho, the examining physician, as plaintiff's "treating physician." (Pl's Brief, p. 7.) Regardless, it is clear that the opinions provided by Drs. Vinh, Hassan, and Cho provide support for the Law Judge's decision that plaintiff's allegations of disability were not credible.

[6]Listing 1.04 refers generally to disorders of the spine. 20 C.F.R. Part 404, Subpart P, Appendix 1.

6

the Law Judge must consider all evidence in the record about the impairment(s) and the effects thereof on the claimant. 20 C.F.R. § 404.1526(c). In that connection, the Law Judge may consider the opinion of a State Agency medical consultant, but, in the end, the Law Judge (and finally the Commissioner) has the responsibility of deciding whether any impairment or combination meets the equivalency requirements of the Listings. 20 C.F.R. §§ 404.1526(d) and (e).

For the same reasons there is substantial evidence supporting the Law Judge's determination that plaintiff is able to perform a limited range of light work, the medical record in this case supports the Law Judge's finding that she failed to prove that her impairments met or equaled any of the listings. None of her treating doctors offer such an opinion, her course of treatment does not suggest such, and the other medical evidence in the record would not compel such a finding. Moreover, plaintiff's bare assertions that her back impairment meets Listing 1.04 and that the combination of her impairments "should" equal a listing, is not sufficient to meet her burden of proof. Thus, the undersigned finds that the Law Judge's determination that plaintiff's medically determinable impairments, viewed individually or in combination, did not meet or equal a listed impairment, is supported by substantial evidence.

Finally, plaintiff contends that the Law Judge erred in finding that her complaints were not fully credible. (Pl's Brief, pp. 9-10.) Plaintiff argues that the Law Judge's reliance on her daily activities to conclude she performs "almost a full range of activities of daily living and household tasks" is reversible error. (Pl's Brief, p. 9.)

To the extent a claimant's pain allegations are inconsistent with the available evidence, they need not be accepted. *Collins v. Astrue*, 2007 WL 2752698, *8 (W.D.Va. 2007); *Craig*, 76

7

F.3d at 595. Moreover, because it is the role of the Law Judge to make credibility determinations, the Law Judge's findings regarding a claimant's pain and the impact it has on his or her ability to perform substantial gainful activity is entitled to "great weight." *Collins*, 2007 WL 2752698, *8 (quoting *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)).

Here, the Law Judge found that plaintiff's allegations concerning the severity, chronicity and debilitating nature of her limitations, her subjective complaints of pain, and her inability to work, and perform functional activities, activities of daily living, and work-related activities were "not credible." (R. 19.) The Law Judge further found that, although plaintiff may perform tasks more slowly, her impairments did not preclude her from performing substantial gainful activity. (R. 19-20.) As noted above, plaintiff has received *very* sporadic and conservative treatment for her back pain following the 1999 surgery. This certainly discredits her allegations of disabling back pain. Also, even though she has alleged significant problems with walking, Dr. Cho, the examining physician, opined that plaintiff had only a "slight" difficulty walking and only a "mildly" abnormal gait. (R. 132.) Dr. Cho also noted that plaintiff did not require use of an ambulation device. (R. 131.)

The record reveals that, although plaintiff has trouble performing activities of daily living and needed to work at her own pace, by her own admission, she was able to do basic activities of daily living and household tasks. For example, in a Function Report filled out by her on April 4, 2005, plaintiff reported that if she worked at her own pace she was able to prepare her own meals daily, do light housework, wash dishes, do laundry, and light dusting. (R. 83, 85.) Plaintiff also reported that she regularly visited family members that live close to her, went to the grocery store twice a week, and went to the post office. (R. 86-87.)

8

The Law Judge's assessment of plaintiff's credibility also is supported by the opinions of the two record reviewing physicians. Specifically, Dr. Vinh opined that plaintiff's allegations were only "partially" credible, an opinion subsequently adopted by Dr. Hassan. (R. 141-142.) Thus, the undersigned concludes that the Law Judge's finding that plaintiff was "not credible" is supported by substantial evidence.

For these reasons, it is RECOMMENDED that an Order enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

_11-09-07_
Date

9