CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

MAY 23 2008

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| NORA JANE SMITH,<br><br>         *Plaintiff,*<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>*Commissioner of Social Security,*<br><br>         *Defendant.* | CIVIL NO. 3:07CV00014<br><br><br>MEMORANDUM OPINION<br><br><br>JUDGE NORMAN K. MOON |

  This matter is before the Court on the parties' cross-motions for summary judgment (docket #11 and #13), the Report and Recommendation ("Report") of U.S. Magistrate Judge B. Waugh Crigler (docket #15), and Plaintiff's objections thereto (docket #16). In his Report, Judge Crigler recommends that I (1) affirm the Commissioner's final decision denying Plaintiff's claims for a period of disability and disability insurance benefits under the Social Security Act, (2) grant the Commissioner's motion for summary judgment, and (3) dismiss this case from the docket. Plaintiff timely filed objections to the Report, obligating the Court to undertake a *de novo* review of those portions of the Report to which objections were made. 28 U.S.C. § 636(b); *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982). Having conducted such a review, I find that the Commissioner's final decision is supported by substantial evidence. Accordingly, I will overrule Plaintiff's objections, adopt the Report in its entirety, and enter an Order consistent with the recommendations therein.

### I. BACKGROUND

  On February 25, 2005, Plaintiff Nora Jane Smith protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning June 30, 2002.

(R. 12.) Plaintiff's claim was denied initially on July 22, 2005, and upon reconsideration on September 15, 2005. (*Id.*) She filed a request for a hearing before an Administrative Law Judge (ALJ) on November 1, 2005. (*Id.*) After the hearing, the ALJ decided on August 25, 2006 that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 21.)

In reaching this conclusion, the ALJ found that Plaintiff's impairments—a back disorder and diverticulitis/irritable bowel syndrome—were severe but did not individually or collectively meet or medically equal any of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 14.) Furthermore, the ALJ determined that Plaintiff's testimony regarding the severity, chronicity, and debility of her pain and limitations was exaggerated and incredible. (R. 19.) The ALJ also found that Plaintiff retained the residual functional capacity (RFC) to perform light work, including her past relevant work as a receptionist and a cashier/presser. (R. 15, 20.) Thus, the ALJ ultimately concluded that Plaintiff was not disabled under the Act. (R. 21.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review and adopted the ALJ's decision as the final decision of the Commissioner. (R. 5.) Plaintiff then filed the instant civil action, seeking judicial review of the Commissioner's final decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I referred the matter to Magistrate Judge Crigler for proposed findings of fact and a recommended disposition. After the parties filed cross-motions for summary judgment, Judge Crigler issued his Report, to which Plaintiff timely filed objections.

## II. STANDARD OF REVIEW

The Commissioner's factual findings must be upheld if they are supported by substantial evidence and were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citation omitted), and consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is responsible for evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545. Any conflicts in the evidence are to be resolved by the Commissioner (or his designate, the ALJ), not the courts, and it is immaterial whether the evidence will permit a conclusion inconsistent with that of the ALJ. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). The Court may not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Instead, the Court may only consider whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Craig*, 76 F.3d at 589.

### III. DISCUSSION

Plaintiff makes three principal objections to the Report: (1) the Report's alleged failure to adequately address the effect of her diverticulitis on her alleged disability; (2) the Report's acceptance of the ALJ's determination that Plaintiff's allegations were not credible; and (3) the ALJ's alleged failure to consider that Plaintiff should be evaluated under the sedentary work table of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2. I will address each of these objections in turn.[1]

---

[1] Notably, Plaintiff did not object to the Report's finding that Plaintiff failed to prove that her impairments met or equaled any of the listed impairments.

## A. Plaintiff's Diverticulitis

Plaintiff argues that the Report fails adequately to address the effect of her diverticulitis on her alleged disability, and she is correct that the Report focuses almost exclusively on her back disorder. Plaintiff argues generally that if the effect of her diverticulitis is properly accounted for, there is not substantial evidence to support the ALJ's decision that Plaintiff is not disabled under the Act. Although the relationship to Plaintiff's diverticulitis is not entirely clear, the focus of her argument seems to be on the Report's discussion of the ALJ's decision to accord little weight to an October 2005 physician's opinion that Plaintiff is disabled. That opinion was rendered by Dr. Michaels, who performed back surgery on Plaintiff in 1999 and is her treating physician for her back disorder. In October 2005, he completed a physical capacities evaluation of Plaintiff, opining, in essence, that her physical capacities are so severely restricted that she cannot work.[2] (R. 144–45.) The thrust of Plaintiff's argument is as follows:

> The first two years following [the 1999] surgery Plaintiff did fairly well and she was able to work. This is not contested by Plaintiff. All of that changed in July, 2002 when Plaintiff's second "severe" condition, diverticulitis, demanded that she forgo her pain medications which were responsible for her previous success because she became unable to tolerate them, and she descended into an existence of severe pain. It was at this time that Plaintiff had to discontinue her work. . . . Certainly the second condition, diverticulitis, played an enormous role in Plaintiff discontinuing employment and should be worthy of mention.

(Pl.'s Objections 1–2.) Thus, Plaintiff argues that her diverticulitis was the cause of her inability to continue her back pain medications beginning in July 2002, which in turn was the cause of her allegedly disabling pain.

Significantly, there is no substantial evidence that Plaintiff was taking *any* pain medication in July 2002, other than an occasional ibuprofen tablet for intermittent discomfort.[3]

---

[2] Of particular note are his opinions that in an 8-hour workday, Plaintiff can sit for only 1–2 hours and cannot stand, walk, stoop, squat, crawl, climb, or work with her arms extended at waist or shoulder level. (R. 144.)

[3] During his July 2002 evaluation of Plaintiff, Dr. Michaels prescribed Bextra, a nonsteroidal anti-inflammatory, and his notes do state that Plaintiff "will use it less frequently than she did before," thus implying that she had

(*See* R. 147, 150.) Moreover, Plaintiff's argument is contradicted by her own testimony before the ALJ. Consistent with Dr. Michaels' post-surgery evaluations through July 2002 (R. 146–47, 149–53), Plaintiff does not now dispute that the surgery was at least fairly successful in alleviating her back pain until that time. But her testimony before the ALJ was that her life changed "drastically" after the surgery and that she "wasn't the person [she] was before"—in essence, Plaintiff testified that the surgery was not only a failure, but that it actually worsened her condition. (R. 196.)

As to Plaintiff's diverticulitis, she may be correct that it is "worthy of mention," but its absence from the Report does not undermine the conclusion that there is substantial evidence supporting the ALJ's decision to accord little weight to Dr. Michaels' October 2005 opinion.

> [A]ccording to the regulations promulgated by the Commissioner, a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."

*Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590).

The ALJ explained his decision regarding Dr. Michaels' opinion as follows:

> The opinion of the claimant's treating orthopedic surgeon, Dr. Michaels, in October 2005 for a very limited range of sedentary work is given little weight because it is inconsistent with his office records, laboratory studies over time, and his prior release of the claimant [in November 1999] to return to light work. It is also based on the claimant's subjective reports of pain and her reported inability to perform functional activities rather than on objective findings supported by laboratory studies."

(R. 20.) Indeed, prior to Plaintiff's discharge from Dr. Michaels' care in July 2000, his reports of her progress were extremely positive. (*See* R. 147, 149–53.) Following her discharge, two years

---

previously been prescribed Bextra at some unspecified time. (R. 146.) The record contains no evidence, however, as to when or by whom.

elapsed before Plaintiff returned to see Dr. Michaels in July 2002, and even then he noted that she "has been functioning quite well." (R. 146.) At that time, he anticipated seeing her again "in about six to eight weeks as symptoms warrant." (*Id.*) Apparently, Plaintiff's symptoms did not so warrant because it was more than three years before Plaintiff again returned to Dr. Michaels in October 2005.[4] Thus, Dr. Michaels' October 2005 opinion might fairly be characterized as "out of the blue," and was certainly not consistent with his prior evaluations.

Moreover, the record supports the ALJ's characterization of Dr. Michaels' opinion as not based "on objective findings supported by laboratory studies." (R. 20.) Plaintiff's x-rays revealed no problems, she was neurologically "intact," and her physical examination revealed only that she "stands in a flexed forward position" and experiences "pain with hyperextension" and "some decreased sensation extending to her right lower extremity." (R. 145.) Furthermore, Dr. Michaels tacitly acknowledged on the physical capacities evaluation form that his objective findings did not fully support his opinion. (R. 145.) Part X of the form states: "If your answer[s] to the above questions severely restrict the client and your objective findings do not indicate this degree of severity, please give us your reasons for the restrictions." (R. 144.) In choosing to respond to Part X, Dr. Michaels was acknowledging that his opinion indicated severe restrictions to Plaintiff's physical capacities and that his "objective findings do not indicate this degree of severity."[5] (*Id.*) Thus, the record supports the ALJ's conclusion that Dr. Michaels' opinion was based on Plaintiff's "subjective reports of pain and her reported inability to perform functional activities." (R. 20.)

---

[4] As Judge Crigler noted, "[i]t is difficult not to draw an inference that this evaluation was performed in connection with the instant claim for benefits." (Report 4 n.3.) The evaluation occurred on October 27, 2005, which was roughly one month after her claim had been denied on reconsideration and five days before she filed her request for a hearing before the ALJ. (R. 12.)

[5] The substance of Dr. Michaels' response to Part X was that Plaintiff's severe restrictions were due to severe lumbosacral strain and right hip strain. (R. 144; *see also* R. 18.)

Finally, Dr. Michaels' opinion is inconsistent with other substantial evidence, namely the May 2005 opinion of Dr. Cho, who examined Plaintiff for the state agency. With respect to Plaintiff's range of motion, Dr. Cho stated that Plaintiff "does have some decreased range of motion findings at the dorsolumbar spine" and "has overall some mild findings in range of motion consistent with aging and arthritis. However there is nothing significant in terms of range of motion findings other that the dorsolumbar spine." (R. 132.) He also noted that Plaintiff has "some weakness in the lower extremities" and "a mildly abnormal gait." (*Id.*) Although Dr. Cho's opinion suggests that Plaintiff's physical capacities are at least somewhat restricted, it is clearly inconsistent with the severe restrictions described in Dr. Michaels' opinion. Moreover, Dr. Vinh adopted Dr. Cho's findings in reaching his opinion as to Plaintiff's RFC, which described exertional limitations far less severe than those described by Dr. Michaels. (*Compare* R. 136–42, *with* R. 144.)

In sum, the ALJ's decision to accord little weight to Dr. Michaels' opinion was based on substantial evidence and was consistent with the Fourth Circuit's admonition that a treating physician's opinion "should be accorded significantly less weight" if it "is not supported by clinical evidence or if it is inconsistent with other substantial evidence." *Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590). Accordingly, I will overrule this objection.

### B. Plaintiff's Credibility

Plaintiff's other objection to the Report is its acceptance of the ALJ's determination that Plaintiff's allegations were not credible. She argues that "[e]ven the state agency found Plaintiff to be partially credible." (Pl.'s Objections 2 (citing R. 141).) Plaintiff's argument is unpersuasive, however, because the ALJ did not conclude that none of Plaintiff's allegations were at all credible; rather, his conclusion was more limited:

> The [ALJ] concludes that the claimant's complaints of pain are exaggerated and that, although she may have some pain, the pain is not totally debilitating because she performs almost a full range of activities of daily living and household tasks. . . . Her complaints are inconsistent with her doctors' records, with objective laboratory studies, and with her physicians' notes regarding her reports to her treating physicians. Although her alleged limitations may cause her to perform tasks more slowly, she is able to perform work with appropriate treatment in an appropriate work setting.

(R. 19.) As to the substance of the ALJ's credibility determination, the record fully supports his analysis of Plaintiff's daily activities, primarily with Plaintiff's own admissions. Furthermore, Plaintiff's complaints and the alleged limitations identified in Dr. Michaels' October 2005 opinion are essentially one and the same. Accordingly, the ALJ's determination that Plaintiff's complaints are inconsistent with other substantial evidence in the record is also fully supported for reasons already discussed.[6]

"Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence." *Craig*, 76 F.3d at 595 "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). The ALJ's credibility determination is entitled to substantial deference and is well supported by the record. Accordingly, I will overrule this objection.

### C. The Sedentary Work Table

Plaintiff's final objection is that the ALJ did not consider that Plaintiff should be evaluated under the sedentary work table of the Medical-Vocational Guidelines (MVG), 20

---

[6] Of particular note is the fact that, as Judge Crigler put it, "[P]laintiff has received *very* sporadic and conservative treatment for her back pain following the 1999 surgery." (Report 8.)

C.F.R. pt. 404, subpt. P, app. 2, tbl. 1.[7] Plaintiff claims that if she were so evaluated, the MVG would mandate a finding of "disabled."

The fatal flaw in Plaintiff's argument is that the MVG apply only at step 5 of the sequential evaluation process, 20 C.F.R. § 404.1520, and in this case, the process concluded at step 4 with the ALJ's determination that Plaintiff is able to perform her past relevant work (R. 20–21). Furthermore, that determination was based on substantial evidence for the same reasons already discussed in connection with Dr. Michaels' opinion and Plaintiff's credibility. Thus, the evaluation process was properly concluded at step 4, and the ALJ had no obligation to apply the MVG at all. Accordingly, I will overrule this objection.

### IV. CONCLUSION

Having undertaken a *de novo* review of those portions of the Report to which objections were made, as set forth above, I find that the Commissioner's final decision is supported by substantial evidence. Accordingly, I will enter an Order OVERRULING Plaintiff's objections, ADOPTING the Report in its entirety, AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment, DENYING Plaintiff's motion for summary judgment, and DISMISSING this case from Court's docket.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record and to Magistrate Judge Crigler.

Entered this 23rd day of May, 2008.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[7] This issue was not addressed in the Report. I will assume that Plaintiff is objecting to its omission.